IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Natalie I., | ) | Case No.: 9:22-cv-04455-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Molly H. Cherry ("Report and Recommendation" or "Report" or "R&R") under Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Natalie I.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of Defendant Commissioner of Social Security Administration ("Defendant" or "Commissioner"), partially denying her Disability Insurance Benefits ("DIB") during the relevant period (but not for the entire period) under the Social Security Act ("Act"). The Magistrate Judge issued a Report and Recommendation on January 10, 2024, recommending the Commissioner's decision be affirmed. (DE 16.)

On February 23, 2024, Plaintiff filed an Objection to the Report and Recommendation, raising several issues. Plaintiff states:

> what the [Administrative Law Judge ("ALJ")] and the Magistrate Judge failed to do was address the medical need of Mrs. Isler to elevate her legs prescribed by Dr. Phan which, according to both vocational experts, would preclude her from performing her job at Blue Cross Blue [Shield]. (T. 161-162, 117-118) That is the precise error that warrants reversal and remand to require Defendant to expressly

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

address this important evidence. Secondly, none of the other treating or examining physicians specifically addressed this issue.

(DE 19, pp. 1-2.) Finally, Plaintiff also objects to the Magistrate Judge's reference to the ALJ's finding that medical opinions provided by Dr. Crosswell were not persuasive, in part, because the opinions were inconsistent with treatment notes from other providers (*e.g.*, Drs. Iverson and Chen) (DE 19, p. 6). Defendant filed a reply in opposition. (DE 20.) Having carefully considered Plaintiff's objection and the applicable law, the Court affirms the decision of the Commissioner.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates here without a full recitation. (DE 16.) However, as a brief background relating to the objections raised by the Plaintiff, the Court provides this summary. Plaintiff sought DIB following a fall in which she sustained an orbital fracture on November 30, 2017. (DE 19, pp. 8-9.) She claims disability based on poor vision, numbness in her hands, discomfort, and numbness in her feet that wakes her at night, and pain in her neck. (DE 12, pp. 7-8.) Plaintiff has past relevant work as a customer service advocate employed by Blue Cross Blue Shield for thirty years. (DE 12, p. 8.)

Plaintiff applied for DIB in December 2018, alleging disability beginning on November 30, 2017. (DE 11-5, pp. 5-8.) Her claim was denied initially and on reconsideration. (DE 11-4, pp. 2, 12.) After the Appeals Council vacated the ALJ's decision denying DIB, the claim was remanded for a de novo hearing. (DE 11-3, pp. 75-81.) On May 12, 2022, the ALJ held a second hearing. (DE 11-2, pp. 85-127.) On June 29, 2022, the ALJ issued a partially favorable decision, finding that Plaintiff became disabled on March 17, 2021, instead of her alleged onset date of November 30, 2017. (Id. at 51-84.) Plaintiff appealed to the Appeals Council, asserting her disability began on November 30, 2017, and that she was entitled to additional accrued benefits

from November 30, 2017, through March 17, 2021. (Id. at 43-44.)  On October 17, 2022, the Appeals Council affirmed the ALJ's decision, making it final.  (Id. at 2-6.)  This appeal followed.

## LEGAL STANDARD

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  See Mathews v. Weber, 423 U.S. 261 (1976).  The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  See 28 U.S.C. § 636(b)(l).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  Absent any specific objection, the court only reviews the report and recommendation for clear error.  See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is limited.  Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[2]  42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through the application of the correct legal standard.  See Johnson v. Barnhart, 434

---

[2] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

3

F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitute the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

## DISCUSSION

Plaintiff objects to the Report and Recommendation, stating the ALJ and Magistrate Judge failed to "address the medical need of Mrs. Isler to elevate her legs prescribed by Dr. Phan, which, according to both vocational experts, would preclude her from performing her job at Blue Cross Blue [Shield]." (DE 19, pp. 1-2.) This argument is a reiteration of her argument that she was medically required to elevate her leg so often that she would have been unable to work. (Id.) To support this allegation, Plaintiff again references a one-time treatment note encouraging her to elevate her leg due to temporary swelling. (Id.) But as the Magistrate Judge comprehensively and ably explained, "the ALJ expressly considered this specific treatment note in his decision." (DE 116, p. 18.) Moreover, the ALJ also "considered Plaintiff's testimony—given during a time when the ALJ found Plaintiff disabled—that she had daily leg swelling." (Id.) The Magistrate Judge

4

went on to reasonably explain why this evidence did not undermine the ALJ's residual functional capacity analysis.

Specifically, after the single treatment notation encouraging Plaintiff to elevate her leg, "Plaintiff did not report leg swelling to treatment providers, treatment providers did not note leg swelling during physical examinations, and no treatment provider encouraged Plaintiff to continue elevating her legs." (DE 16, p. 19.) The Magistrate Judge then identified specific evidence supporting this conclusion. (See id.) The treatment note was not indicative of an ongoing or work-preclusive treatment recommendation, notwithstanding Plaintiff's contention that the treatment record showed ongoing leg swelling after the one-time recommendation. (See DE 19, pp. 2-3.) The Court agrees with the Commissioner and the Magistrate Judge that the only reference to leg swelling in follow-on treatment records is in the list of previously diagnosed issues (see DE 11-7, pp. 331, 389, 406). There do not appear to be documented complaints of leg swelling, treatment for leg swelling, or observations of leg swelling, as explained by the Magistrate Judge (see id. 333-34, 391, 407-08). In fact, Plaintiff herself denied joint swelling and adenopathy during these appointments (id. at 330, 388, 405). Therefore, substantial evidence supports the ALJ's residual functional capacity, and the Court was "not left to guess as why the ALJ determined that Plaintiff did not need to elevate her legs throughout the day" (DE 16, pp. 19-20) and so the Court overrules this objection.

Next, Plaintiff contends that the Magistrate Judge improperly "relied largely upon non-treating examiners" but cites old medical opinion regulations that are not applicable to this case for the proposition that treatment providers should be given special deference over the reviewing state agency experts (see DE 19, p. 4). However, as the Magistrate Judge explained, the regulation referenced by Plaintiff does not apply to this case. And under the applicable regulation, "the ALJ

5

is not to defer to or give any specific weight to medical opinions based on their source" (DE 16, pp. 7-8).  Moreover, the Magistrate Judge did not rely on any one type of evidence.  Instead, the Magistrate Judge explained that the ALJ's decision was based on, and supported by, a wide array of evidence amounting to substantial evidence (see DE 16).  Therefore, the Court overrules this objection.

Lastly, Plaintiff objects to the Magistrate Judge's reference to the ALJ's finding that medical opinions provided by Dr. Crosswell were not persuasive because the opinions were inconsistent with treatment notes from other providers (*e.g.*, Drs. Iverson and Chen) (DE 19, p. 6).  However, as the Magistrate Judge properly explained, this is the very evidence that the ALJ is required to consider under the relevant regulations (DE 16, p. 14, referring to 20 C.F.R. § 404.1520c).  Indeed, "consistency"—how consistent an opinion is with other medical sources—is one of the most important factors in medical opinion analysis. See 20 C.F.R. § 404.1520c(b)(2).  Moreover, Plaintiff does not address the additional reasons the ALJ found Dr. Crosswell's opinions not persuasive.  (DE 11-2, pp. 58-70,)  Therefore, the Court overrules this objection.

## CONCLUSION

For these reasons, the Court adopts the Report and Recommendation and affirms the Commissioner's decision.

**AND IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 12, 2024